UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| William Prince, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Perfect Delivery, Inc., *et al.*,<br><br>Defendants. | Civil Action No.: 8:17-01950-AMQ<br><br>**ORDER GRANTING APPROVAL OF SETTLEMENT** |

**I. Introduction and Background**

William Prince ("Plaintiff") filed this action, pursuant to the Fair Labor Standards Act ("FSLA"), against Perfect Delivery, Inc. and Perfect Delivery North America, Inc. ("Defendants") on July 24th, 2017, alleging that Defendants under-reimbursed their delivery drivers for the automotive expenses they incurred to such an extent their unreimbursed business expenses reduced their wages below the federal minimum wage. (ECF No. 1, at 1.) Plaintiff sought damages and attorneys' fees on behalf of himself and other similarly situated delivery drivers ("Plaintiffs"). *Id.*

On August 14, 2017, the parties filed a joint motion stipulation to conditional class certification and asked the Court to approve a proposed notice to the class. (ECF No. 10) The Court granted the motion on August 15, 2017. (ECF No. 12.) Subsequently, the notice was sent out to the potential class members. During the opt-in period, 171 class members opted into the class, including Plaintiff. (ECF No. 45-2, at 2.) On January 22, 2018, the parties negotiated a settlement during a day-long mediation. *Id*. On February 27, 2018, Plaintiff filed with this Court a Joint Motion for Approval of Collective Action Settlement (ECF No. 45), a Motion for Cost

1

and Fees (ECF No. 46), and submitted to the Court the parties' Settlement Agreement and Release of Claims. (ECF No. 60.)

Under the terms of the settlement, the total settlement amount is $290,575.00. (ECF No. 60.) The class members, including Plaintiff, will receive a net amount of $184,216.67. *Id.* The net amount is calculated by deducting the following fees and expenses from the total settlement amount: (1) $3,000 in service award for Plaintiff; (2) $96,858.33 in attorney's fees; (3) an amount not to exceed $4,500 in costs; and (4) and an amount not to exceed $2,000 in claims administration. *Id.* at 4. Each class member will receive an average of $1,699.27, before attorney's fees and costs. The minimum amount to be received is $25.00 and the highest recovery will be $11,813.20 before attorney's fees and costs. The distribution to each class member will be determined based on the total number of miles driven by such class member, according to Defendants' records disclosed before and after mediation. (ECF No. 60, at 3.) The proposed settlement covers only those individuals who filed or opted-into the lawsuit. It does not resolve or release the claims of those who did not join the lawsuit.

After receipt of the motions decided above, the Court held two status conferences on May 9, 2018 and June 13, 2018, and asked for supplemental briefing in accordance with the settlement factors set forth in *Irvine v. Destination Wild Dunes*, 204 F.Supp.3d 846 (D.S.C. 2016). Plaintiff submitted a Supplement to Joint Motion to Approve Collective Action Settlement and Plaintiff's Motion for Fees and Costs on June 22, 2018. (ECF No. 56.) The Court reviewed the supplemental submissions presented with respect to the settlement and conducted a hearing on the Joint Motion for Approval of Collective Action Settlement (ECF No. 45) and the Motion for Costs and Fees (ECF No. 46) on July 18, 2018. As set forth below, the Court approves the FLSA collective action settlement.

## II. Discussion

### A. Final Class Certification

First, before approving a FLSA collective action settlement, the Court must make a final class certification determination. 29. U.S.C.§ 219(b). In *Irvine,* the Court set forth the factors this Court should consider in determining whether to grant final certification: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id*. at 846, 848-49. (quoting *Rawls v. Augustine Home Health Care, Inc.,* 244 F.R.D. 298, 300 (D. Md. 2007).

First, the Court finds there are significant similarities between Plaintiff and the class members in terms of their factual and employment settings. Plaintiffs were similarly employed by Defendants as delivery drivers: Plaintiffs similarly had the primary job duty of delivering pizza and other food items to Defendants' customers. Defendants similarly required Plaintiffs to provide their own safe, legally-operable, and insured automobile to deliver pizzas and other food items to its customers. To perform these deliveries, Plaintiffs paid for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, and other expenses. Plaintiffs similarly experienced vehicle depreciation as they drove their personal vehicles to perform their deliveries. Defendants reimbursed Plaintiffs at a rate of about 5% to 6% of the cost of each order delivered, which averaged about $1.00 per delivery. Those reimbursements did not cover the actual vehicle costs incurred by Plaintiffs to perform the job. Plaintiffs average round-trip delivery was about five to seven miles. Each of them averaged about two deliveries per work hour and were paid either the exact minimum wage or very close to that minimum wage. (ECF No. 56, Exs 1-79.)

There are also some differences as was discussed at the July 18, 2018 hearing. For example, as counsel for Defendants discussed, the class members drove different distances depending on different store locations and the delivery practices at different stores may not have been identical. Class members also drove different types of vehicles. The Court has evaluated the similarities and differences among Plaintiff and the class members and finds the similarities outweigh the differences.

Second, the primary legal defenses apply equally to Plaintiff and the class members. The predominant issue is whether Defendants provided a reasonable company-wide vehicle reimbursement rate. *See, e.g., Perrin v. Papa John's Int'l., Inc.,* 2013 U.S. Dist. LEXIS 181749, *15-24 (E.D. Mo. Dec. 31); *Perrin v. Papa John's Int'l., Inc.,* 2014 U.S. Dist. LEXIS 133974, *12-13 (E.D. Mo. Sept. 24) (recognizing that these claims boil down to a battle of vehicle costing experts testifying to a reasonable company-wide reimbursement rate). Thus, the primary defense is the provision of a reasonable company-wide reimbursement rate, which can be proven through common evidence. *Id.* Another primary defense is lack of willfulness, which depends on common evidence regarding the bases for Defendants' company-wide reimbursement program. 29 U.S.C. § 255(a). That same evidence may or may not support a company-wide defense to liquidated damages. 29 U.S.C. § 216(b). Thus, the primary defenses apply equally to all Plaintiffs.

Third, fairness and procedural considerations support final certification. Collective adjudication will promote judicial efficiency as all claims depend on the same legal theory, specifically an unreasonable vehicle reimbursement rate, and ultimately depend on the same evidence: a company-wide expert vehicle costing report and testimony. The Court discerns no

4

unfairness to Defendants in collective adjudication. In fact, Defendants join in the Motion for Approval of Collective Action Settlement.

Based upon the application of the facts to the factors pertinent to final certification, the Court finds that all three factors strongly support final certification of the collective action for settlement purposes. Because Plaintiff is similarly situated to members of the proposed settlement class, final certification pursuant to 29 U.S.C. § 216(b) is appropriate.

**B. Approval of Settlement**

Having certified the settlement class, the Court now turns to evaluating the proposed settlement. "To determine whether to approve the proposed settlement, the Court must determine (i) whether the award reflects a reasonable compromise over the issues in dispute; (ii) whether the proposed award of attorneys' fees and costs are reasonable and (iii) whether the service awards are appropriate." *Irvine*, 204 F.Supp. 3d at 849.

**i. Fairness and Reasonableness of Award**

A district court may approve a settlement if the settlement reflects a "reasonable compromise of disputed issues" rather than a "mere waiver of statutory rights brought by an employer's overreaching." *Id.* at 849 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1365 (11th Cir. 1982)). The Fourth Circuit has not addressed the factors to be considered when evaluating proposed FLSA settlements. However, courts in this District and other district courts in the Fourth Circuit provide guidance. *Id.*; *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir.1982). *See, e.g., Saman v. LBDP, Inc.*, No. CIV.A. DKC 12–1083, 2013 WL 2949047, at *2 (D.Md. June 13, 2013); *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08CV 1310(AJT/JFA), 2009 WL 3094955, at *1 (E.D.Va. Sept. 28, 2009) (unpublished).

5

Using the factors from these decisions, this Court will evaluate whether there is a bona fide dispute and whether the proposed settlement is fair and reasonable.

The Court first considers whether there is a bona fide dispute. The Court finds that there is. Plaintiff alleges the FLSA violations described above. Defendants deny the allegations on factual and legal grounds.

Turning to the determination of whether a proposed FLSA settlement is fair and reasonable, a court should consider the following factors: (1) the extent of discovery that has taken place; (2) the stage of the proceedings; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Irvine*, 204 F.Supp. 3d at 849. The Court will discuss each of these issues in turn.

First, the Court finds that, while relatively early in the life cycle of typical federal court litigation, the parties have been able to engage in extensive discovery since the inception of this matter, including production of the critical payroll and vehicle reimbursement data pertaining to each class member. Further, the parties debated their respective interpretations of that data during a day-long mediation. Accordingly, this factor supports settlement approval.

Second, the Court finds that this matter is at an appropriate stage for settlement. The case is complex, both in terms of establishing liability and in proving damages. While the parties have reviewed extensive evidence to evaluate their claims and defenses and to engage in informed, arms-length negotiations, many issues of fact and law remain unanswered and would have to be resolved at or before trial, including a reasonable vehicle reimbursement rate. Any trial would be

lengthy, costly, and complex to resolve the alleged violations of the FLSA's minimum wage requirements during each week of the recovery period. Both sides would be required to pay for expensive expert vehicle costing testimony. See, e.g., *Perrin v. Papa John's Int'l., Inc.*, 2014 U.S. Dist. LEXIS 133974, *12-13 (E.D. Mo. Sept. 24) (recognizing that each side had hired vehicle costing experts to establish a reasonable company-wide vehicle cost reimbursement rate). Regardless of the outcome at trial, post-judgment appeals would be likely. Accordingly, the complexity, expense and duration of litigation weigh in favor of approving the proposed settlement. *Irvine*, 204 F.Supp. 3d at 849-50 ("The Court must determine whether proceedings have progressed to a state sufficient to permit the parties and their counsel to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations with the understanding that trial would be a difficult and costly undertaking.") (internal citations omitted).

Third, there is no evidence of fraud or collusion in the settlement. Indeed, the adversarial nature of this litigation and the compromise in the reimbursement amount, discussed more fully below, demonstrates the parties negotiated the settlement fairly and at arm's length. "[A]bsent any evidence of fraud or collusion, the Court presumes none occurred." *Irvine*, 204 F.Supp.3d at 850.

Fourth, the Court finds that Plaintiffs are represented by attorneys with sufficient experience in this matter. During this litigation, Plaintiffs' counsel have acquired a sufficient knowledge of the facts and legal issues relating to the respective claims and defenses and have acquired ample evidence on which to assess the proposed settlement. Further, the Joint Motion for Settlement Approval (ECF No. 45) indicates Plaintiffs' counsel have litigated or arbitrated over 50 similar cases on behalf of pizza delivery drivers of numerous corporate and franchise

pizza companies across the country for almost nine (9) years. (ECF Nos. 45-3, ¶ 9, and 45-4, ¶ 3). Based on their knowledge of the facts and the applicable law, as well as their experience in many similar FLSA actions on behalf of employees, the Court finds that the Plaintiffs are represented by attorneys with sufficient experience in this matter.

Fifth, Plaintiff has executed the Settlement Agreement indicating his approval of the agreement. At the hearing, the parties confirmed all opt-in Plaintiffs received notice of the terms of the settlement including the amounts they would receive. No opt-in Plaintiff has objected to the settlement despite serving notice. Further, class counsel represented to the Court the opinion that the settlement is fair and reasonable.

Sixth, the amount of the settlement is reasonable in relation to the probability of success and the potential recovery. The parties disagree about the merits of Plaintiffs' claims and the viability of the various defenses. If Plaintiffs survived decertification, the outcome of a trial on the merits was far from a foregone conclusion. Even if Plaintiffs established liability, they still faced considerable obstacles in proving both the fact and amount of damages, which would require analysis of extensive payroll records and documentation and the retention of an expensive expert witness.

Under the settlement, Plaintiffs will recover the actual damages based on a reasonable reimbursement rate of $.45 per mile. (ECF No. 45-2, at 15.) Lesser recoveries in FLSA claims are have been approved by federal courts around the nation. See *Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820, *11 (S.D. Fla. Aug. 14) (approving settlement of same claim equivalent to approximately two-thirds of the maximum value of *actual* damages (unpaid minimum wages)); *Fuentes Cordova v. R&A Oysters, Inc.,* 2016 U.S. Dist. LEXIS 123042, *2-3 (S.D. Ala. Sept. 12) (finding settlement constituting 50% recovery of *wages* (actual damages) as

estimated by expert report to be fair and reasonable); *Nall v. Mal-Motels, Inc.,* 2014 U.S. Dist. LEXIS 197441, *8 n.8 (M.D. Fla. Apr. 7) (finding settlement constituting 40% of damages claimed was fair and reasonable settlement); *Vigna v. Emery Fed. Credit Union*, 2016 WL 7034237, at *3 (S.D. Ohio Dec. 2, 2016) ("The Court agrees that nearly all of the terms of the settlement are fair and reasonable, particularly in light of the fact that the total Settlement Fund constitutes a 55% recovery of *wages* [alone, not liquidated damages] as estimated by the expert's report."); *Millan v. Cascade Water Servs.,* 310 F.R.D. 593, 611-12 (E.D. Cal. Oct. 8, 2015) (approving FLSA settlement equating to approximately 46% of the maximum damages calculated by the plaintiffs (collecting cases)).

Although the top of the range of potential recovery at trial may have been greater than obtained through this settlement, it is equally possible that such recovery would have been less. Thus, the parties, therefore, disagree on the probability of Plaintiffs' success on the merits both as to liability and damages and the range of possible recovery. Consequently, this settlement provides a certain result and value now, as opposed to a speculative result that may occur years from now. The benefit that will be received by the claimants immediately and made certain by the settlement is a significant factor weighing in favor of the Court's approval of the proposed settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 326 (N.D. Ga. 1993) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, 'it has been held proper to take the bird in the hand instead of a prospective flock in the bush.'"); *see also Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[T]here is a range of reasonableness with respect to a settlement—a

9

range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion").

Finally, the settlement has no impact on the rights of the potential class members who have not opted-in to the class action. Such individuals are free to decide to bring individual claims if they elect to do so.

For the reasons discussed above, the Court finds that the totality of the factors set forth in *Irvine* favor settlement approval. The Court finds that the settlement is fair, reasonable and adequate, is in the best interests of the class members and should be approved, especially in light of the benefits to the class members accruing therefrom, the substantial discovery and investigation conducted by Plaintiffs' counsel prior to the proposed settlement, and the complexity, expense, risks, and probable duration of further litigation. The settlement is hereby approved in accordance with 29 U.S.C. 216(b) and shall be consummated in accordance with its terms.

**ii. Reasonableness of Attorney's Fees**

The settlement also provides for an award of attorneys' fees of one-third of the settlement fund in the amount of $96,858.33. (ECF No. 60 at 4.) The Court must determine whether that fee is reasonable and fair. "The trend among most courts seems to be towards favoring the percentage-of-the fund approach to awarding attorney's fees in class action cases because it 'better aligns the interests of class counsel and class members ... [by] t[ying] the attorneys' award to the overall result achieved rather than the hours expended by the attorneys.'" *DeWitt v. Darlington Cty.*, S.C., 2013 WL 6408371, at *6 (D.S.C. Dec. 6) (*quoting Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455 (S.D.W. Va. 2010)). Nevertheless, courts frequently conduct a lodestar cross-check to assess the reasonableness of a percentage-of-the-fund fee award. *Savani*

*v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 576 (D.S.C. 2015)."Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Id.* at 470; *see also Goldenberg v. Marriott PLP Corp.*, 33 F.Supp.2d 434, 439 n.6. (D. Md. 1998) (range of 3 to 4.5 lodestar multiplier was customary and reasonable); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) (approving fee award that would amount to a multiplier of nearly 3).

Here, the requested fee represents an average of rate of $354.09 per hour. Defendants counsel agreed at the hearing that such an average rate is reasonable and consistent with rates for FLSA cases in this District. The Court agrees. Next, as of June 22, 2018, the time spent by the attorneys and paralegals representing Plaintiffs, using hourly rates for each, totaled $65,846. That amount represents an approximate lodestar ratio of 1.47. (ECF No. 56, at 5.) As discussed at the July 18, 2018 hearing, the time spent by Plaintiffs' counsel on this matter has increased since June 22, 2018, with will further reduce the lodestar ratio. Considering the record as a whole, the Court finds that Plaintiffs' counsel's attorneys' fees and expenses as described above are reasonable and are hereby approved.

### iii. Reasonableness of Service Award

Courts in this District have recognized that "[s]ervice awards, or incentive payments, [are] awarded in FLSA collective actions." *Irvine,* 204 F.Supp.3d at 850. "Such payments compensate Plaintiffs for their additional efforts, risks, and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action." *DeWitt v. Darlington Cnty.,* 2013 U.S. Dist. LEXIS 172624, *38-40 (D.S.C. Dec. 6). "Service or incentive payments are especially appropriate in employment litigation, where 'the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he

has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.'" *Id.* (quoting *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 187 (W.D.N.Y. 2005)). Such awards "'encourage socially beneficial litigation by compensating named plaintiffs for their… personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook.'" *Smith v. Res- Care, Inc.,* 2015 U.S. Dist. LEXIS 145266, *28 (S.D. W.Va. Oct. 27) (quoting *Helmick v. Columbia Gas Transmission,* 2010 U.S. Dist. LEXIS 65808, *8 (S.D. W. Va. Jul. 1)).

In evaluating the reasonableness and fairness of personal service awards, courts consider, among other things, the named plaintiff's contribution to the litigation, including assistance with investigating claims, negotiating, responding to discovery, attending meetings, and coordinating and communicating with counsel on behalf of all plaintiffs. *Id.* A $3,000 incentive payment to Plaintiff is reasonable and appropriate in this case because he substantially assisted counsel in achieving this settlement on behalf of all the opt-in Plaintiffs. (ECF No. 45-2 at 19.) Plaintiff was responsible for seeking counsel, initiating this action and providing guidance and assistance on numerous occasions to Plaintiffs' counsel. *Id*. Further, Plaintiff participated in numerous calls with counsel regarding issues which arose in this suit and responded to written discovery. *Id*. Finally, the Court notes that Plaintiff actively participated in person in each round of settlement negotiations and advocated for the interests of the all opt-in Plaintiffs during a full-day mediation. *Id*. Accordingly, the Court finds that the service award is hereby approved.

### III. Conclusion

For the abovementioned reasons, the Court GRANTS the joint motion for settlement approval (ECF No. 45) and motion for attorney fees and costs (ECF No. 46) and the action is DISMISSED with prejudice.

IT IS SO ORDERED.

                                                **s/A. Marvin Quattlebaum, Jr.**
Hon. A. Marvin Quattlebaum, Jr.
United States District Judge

Dated this **23rd** day of **July**, 2018.